## Duff *versus* Wilson.

1. If a co-tenant obtain an outstanding title or encumbrance against the common property, it will, at the election of his fellows, be for their benefit, although the purchase be made in the name of another.

2. When acts of a person standing in a confidential relation admit two constructions, the presumption is in favor of the rightful construction.

3. Equity considers the purchase of one in a confidential relation as bonâ fide and for the benefit of his associates; but he is entitled to be reimbursed before he can be compelled to convey, unless he acted fraudulently.

4. Duff leased to Smathers his share in land, which they owned in common; Wilson became surety for Smathers, who mortgaged to him; Wilson bought an outstanding mortgage on the whole, under which he sold it and became the purchaser in the name of another, who took possession under an habere. In a suit by Duff against Wilson as surety of Smathers, *Held*, that Wilson could not set up the sheriff's sale as an eviction.

November 19th 1872.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 98, to October and November Term 1872.

This was an action of assumpsit, brought April 9th 1868, by Samuel Duff against Samuel Wilson, who was surety for the performance by Philip Smathers, of the covenants of a lease to him from the plaintiff.

The cause had been before tried and resulted in a verdict and judgment for the plaintiff; the judgment was reversed in the Supreme Court (Wilson *v.* Duff, 19 P. F. Smith 316.)

The declaration set out the lease under seal, dated September 10th 1859, for five years, for the undivided half of certain adjoining tracts of land, containing in the whole 600 acres, Smathers himself being the owner of the other half, with privilege to cut timber, &c.; Smathers to deliver five pairs of flat-boats (one pair to be delivered after the first freshet after April 1st 1863, and another after the first freshet after April 1st 1864), for each of which plaintiff should pay him $100.    The lease contained other stipulations as to taxes, &c.

The contract of suretyship, also set out in the declaration, was as follows :—

" September 10th 1859.    I hereby become bound to Samuel Duff for the faithful performance of the covenants and agreements contained in the foregoing agreement on the part of Philip Smathers, in case he shall fail to perform the same.

" SAMUEL WILSON."

The declaration then averred the failure by Smathers to deliver the boats of 1863 and 1864, and to perform his covenants in several particulars, and the consequent liability of the defendant as his surety.

[Duff v. Wilson.]

One of the tracts of land had been conveyed by Matilda Kifer to Smathers and Mary B. Lyon; to secure part of the purchase-money Smathers and Mrs. Lyon, on the 20th of March 1857, gave to Mrs. Kifer a mortgage on the tract conveyed by her. Mrs. Lyon conveyed her interest to Smathers: he afterwards conveyed an undivided half to the plaintiff, after which the lease set out in the declaration was made.

The whole 600 acres was known as the "Platt saw-mill property;" it comprised the Kifer tract and two others, known as the "Bingham tracts." On the 29th of November 1862 the Kifer tract was sold by the sheriff under the Kifer mortgage, and the purchaser, Joseph Henderson, obtained possession under an habere facias.

The defendant asserting that this was an eviction of part of the demised premises, held that Smathers was discharged from the payment of any of the rent, and that therefore the defendant as surety was not liable.

The plaintiff alleged that, in the "spring of 1861, himself, the defendant and David Gilmore were tenants in common of the "Platt saw-mill property," and that the defendant, whilst such tenant in common, procured an assignment of the Kifer mortgage to himself, caused it to be foreclosed, and the property sold; that Henderson, the purchaser, bought the Kifer tract for the defendant, who thus became the actual owner.

The cause was tried, May 27th 1872, before Kirkpatrick, J.

The plaintiff gave in evidence the lease and defendant's contract as surety; also, that Smathers had failed to deliver the boats in 1863 and 1864.

The defendant gave evidence tracing the title of the Kifer tract to Mrs. Lyon and Smathers, and their mortgage to Mrs. Kifer; scire facias sur mortgage, August 18th 1862, Kifer "for use of Samuel Wilson, now for the use of Joseph Henderson, against Philip Smathers and Mary B. Lyon," and sale by sheriff, November 29th 1862, to Joseph Henderson for $50, and possession delivered to Henderson, January 31st 1863, under an habere facias.

He gave evidence also for the purpose of showing the performance by Smathers of his covenants.

The plaintiff in rebuttal gave in evidence an article of agreement, dated August 25th 1859, between the defendant, of the first part, and Smathers, of the other part, by which Smathers agreed to sell to defendant the Platt saw-mill property for $1800, with this stipulation:—

" And it is now understood and agreed that the said Samuel is to let the said Philip Smathers redeem, repossess and hold in his own right, all the within-named property, on the 25th

[Duff *v.* Wilson.]

of August 1861, on him (the said Smathers) paying the within debts.''

The plaintiff gave further evidence, that in May 1861 Gilmore, who was then an owner of the land (Wilson claiming to own Smathers's share), and the plaintiff agreed "to protect the Kifer mortgage."

After consultation it was understood that Mrs. Kifer would take in payment land known as the Hetherington land. The plaintiff made a contract with Mrs. Kifer to get the land for her, and she to assign the mortgage jointly to plaintiff, defendant and Gilmore. The plaintiff made an arrangement with the agent of the owner of the land, that he would make a contract for it with the three ; the agent having left for the army had placed his business with a Mr. Craig, who afterwards prepared an article and so informed plaintiff. After some time the defendant made the contract for the land in his own name, without the knowledge of plaintiff, and took an assignment of the mortgage.

There was evidence that the defendant went to Mr. Craig, who sold him the land, defendant having informed Mr. Craig that it would be satisfactory. The land was afterwards sold by the defendant to Mrs. Kifer, for her mortgage.

Gilmore testified in the same manner as to the agreement for the purchase of the land, and conveyance of it to Mrs. Kifer for her mortgage.

The plaintiff gave other evidence of the same character.

He then gave in evidence the deposition of Joseph Henderson, viz. :—

"I am a brother-in-law of Mr. Wilson, the defendant. I merely know the property in Clarion county called the Platt sawmill property by reputation. Never saw it in my life that I remember of. I was at one time an owner of a mortgage on that property. I received a letter from Mr. Wilson, the defendant, stating that he had assigned to me the mortgage on this property. Don't recollect the amount or the party by whom it was given. I knew nothing of it until after the assignment was made until I got notice by letter already spoken of. I did not pay anything to Mr. Wilson for this mortgage. I did take proceedings on this mortgage. I wrote to Mr. Lathy, of Clarion, to collect the mortgage and if it was not paid to bid it up to the amount of the mortgage for me. It was sold, and I got a sheriff's deed for the property. I don't recollect the amount of the bid, but it was a trifle, and I paid nothing but the costs when I got the deed. I can hardly say that the costs were paid with my money, for I paid a portion of the costs with Mr. Wilson's money which I had at the time. There was an account between us. I took further proceedings, for I instructed Mr. Howe to go on to the property and repair it and take charge of the mill, and keep an account with

[Duff *v.* Wilson.]

the mill. I never settled or had any reckoning with Mr. Howe. I deeded my interest in the property to Samuel Wilson. There may have been consideration mentioned in this deed, but there was no money passed between us. When I took this mortgage I paid no money, and when I made the deed to Wilson I received no money. I did not claim any interest in this land or any ownership over it further than I have already stated in my deposition. I think afterwards Mr. Wilson told me the land was sold and the deed was made, and that I had better lift it. Mr. Wilson wrote to me to the effect that the property was good property and would be a good thing for myself and my boys. I acquiesced in the assignment and his views, and proceeded to take action under them, although I did not fully understand it. We had accounts existing between us running for a number of years, and no settlement had been made. The amount of costs paid by me when lifting the deed was about twenty-two dollars. I directed Mr. Howe to take possession of the mill and keep account of the lumber sawed, &c. I gave Mr. Lathy instructions to take all measures necessary to give me possession. There never has been any settlement of accounts between Mr. Howe and myself. Never received any rents or profits from him or never released him. Never received any rents from Mr. Wilson. When I conveyed to Mr. Wilson, I merely conveyed the property and not the rents or profits. There never has been any settlement between Mr. Wilson and myself in reference to these matters."

The defendant gave evidence in answer to the plaintiff's case.

The plaintiff requested the court to charge:—

1. That if the jury believe that in the spring of 1861, the plaintiff and the defendant were jointly interested in the Platt saw-mill property, either as legal or equitable owners, or as lien creditors; that they and David Gilmore, another party interested in said property, agreed to purchase the Kifer mortgage for their mutual protection; that in pursuance of said agreement plaintiff and Gilmore, on behalf of all, made an agreement with Mrs. Kifer for the purchase of said mortgage, to be paid for with the Hetherington land; that plaintiff made a bargain with the agent for the land with which to purchase the mortgage; that defendant afterwards, without the knowledge or consent of plaintiff, closed the contract with the agent and with Mrs. Kifer, in his own name, and took an assignment of the mortgage in his own name, and then assigned the mortgage to Joseph Henderson, without consideration, and caused it to be foreclosed and the property sold in the name of Joseph Henderson—plaintiff not being made a party to the proceedings—for the purpose of acquiring the title to himself and defrauding plaintiff and Gilmore, the defendant cannot set up the title thus acquired under said mortgage in bar of the rent sued for, and plaintiff is entitled to recover.

[Duff *v.* Wilson.]

2. If the jury believe that plaintiff and defendant and Gilmore were tenants in common of the Platt saw-mill property in 1861, and in possession of the same, plaintiff being in possession by his tenant, the defendant could not acquire title against his co-tenants by the purchase and foreclosure of the Kifer mortgage, a common encumbrance, and plaintiff is entitled to recover.

3. That a mortgagee of an undivided interest in land in possession is a tenant in common, as regards the owners of the other undivided interests.

4. That to suspend the rent there must be an actual eviction, and as plaintiff was not a party to either the suit in ejectment or the scire facias on the mortgage by which the eviction is alleged to have been effected—if the jury believe that defendant, and not Joseph Henderson, was the owner of the Kifer mortgage, and the real plaintiff in the proceedings on the mortgage, and was at the time these proceedings were prosecuted and the alleged eviction took place, the assignee of the lease sued on, and in possession of the demised premises as such assignee, neither the ejectment nor the scire facias on the mortgage constitutes such an eviction as will suspend the rent.

5. That in any event plaintiff is entitled to recover the proportion of the stipulated rent which fairly arose and was derived from that portion of the land from which the tenant or his assignee was not evicted.

The defendant also submitted a number of points.

The court charged that the plaintiff was not entitled to recover, and that their verdict *must* be for the defendant; and that this *peremptory* instruction upon their part rendered a formal answer to the various points of the counsel unnecessary.

The verdict was for the defendant.

The plaintiff took a writ of error; assigning for error the instruction of the court and declining to answer the points.

*L. B. Duff* and *R. Woods*, for plaintiff in error.—One of several persons having a joint interest cannot purchase an encumbrance or outstanding title and set it up against his fellows: Weaver *v.* Wible, 1 Casey 270; Keller *v.* Auble, 8 P. F. Smith 410; Lloyd *v.* Lynch, 4 Casey 419.

*S. A. Purviance* (with whom was *W. S. Purviance*), for defendant in error.

The opinion of the court was delivered, January 6th 1873, by Sharswood, J.—When this case was here before (19 P. F. Smith 316), the only question presented upon the record was upon the rejection of an offer by Wilson, the defendant below, to prove

an eviction under the proceedings upon the Kifer mortgage. The learned judge below thought that as Smathers had sold to Duff, clear of all encumbrances, and was, therefore, bound to indemnify him against that mortgage, Wilson, his surety for the rent, could not set up the eviction as a defence. We came to a different conclusion, and reversed the judgment.

On the second trial the evidence before rejected was admitted; and it was shown by the plaintiff, in rebuttal, that by an article of agreement of August 25th 1865, Smathers had agreed to sell and convey to Wilson all his interest in the premises, giving Smathers, however, the right to redeem in two years. It was a mortgage, but Wilson took possession, and continued so until after the period fixed for redemption. Being thus in possession, it also appears that he procured an assignment of the Kifer mortgage to his brother-in-law Henderson, by whom the proceedings on the mortgage were instituted and carried on; and he (Henderson), having become the purchaser at the sheriff's sale, afterwards, by deed, conveyed the title thus acquired to Wilson. That Henderson was merely the trustee of Wilson appears by Henderson's own testimony: "I don't recollect the amount of the bid, but it was a trifle, and I paid nothing but the costs when I got the deed. I can hardly say that the costs were paid with my money, for I paid a portion of the costs with Mr. Wilson's money, which I had at the time. There was an account between us." And again: "When I took the mortgage I paid no money, and when I made the deed to Wilson I received no money."

Smathers being the owner of the whole tract had conveyed a moiety to Duff, who had leased to Smathers his moiety for five years. It is clear, then, that Wilson, by the article of August 25th 1859, became in equity tenant in common with Duff, in such a relation with him, that if he bought in an outstanding encumbrance on the common property, it must, at the election of his co-tenant, enure to his benefit. This is very well settled in this state. When several persons have a joint or common interest in an estate one cannot purchase an encumbrance or an outstanding title, and set it up against the rest, for the purpose of depriving them of their interest: Weaver v. Wible, 1 Casey 270; Lloyd v. Lynch, 4 Casey 419; Keller v. Auble, 8 P. F. Smith 410. The fact that the purchase was made in the name of a third person is of no consequence: Painter v. Henderson, 7 Barr 50. Wherever the acts of a person standing in a confidential relation may admit of two constructions, one right and the other tortious, the presumption is in favor of the former. Equity will, therefore, consider the purchase as bonâ fide, and intended for the benefit of all those with whom he is associated in interest. He is a trustee for them, and is entitled to be reimbursed all the purchase has cost him before he can be required to convey to them. To apply these prin-

[Duff *v.* Wilson.]

ciples to this case.   If Wilson bought the mortgage, and had proceedings instituted upon it, under which, though he was in form turned out of possession, and Henderson put in, yet as Henderson was his agent or trustee, he is not entitled to set this up as an eviction as against Duff.   The most he can claim is by way of set-off, Duff's proportion of the expenses of obtaining the mortgage.

But this is on the hypothesis that he acted bonâ fide.   It is only when the party has acted honestly, or what is the same thing, in the absence of evidence of dishonesty must be presumed to have so acted, that he has any claim to reimbursement.   In case of positive fraud, the rule is otherwise: McGinn *v.* Shaeffer, 7 Watts 412; Chronister *v.* Bushey, 7 W. & S. 152; Beeson *v.* Beeson, 9 Barr 279.   We think that, upon the evidence in the case, there was a question of actual fraud to be submitted to the jury.   If it was the fact that Wilson was a party to an agreement with Duff and Gilmore that the Kifer mortgage should be bought for their common benefit and protection—that Wilson, secretly and, especially, by false representations to the agent of the mortgagee, procured the assignment to Henderson for his own exclusive benefit—that he proceeded on the mortgage, without making Duff a party as terretenant, and without giving him any notice—these were facts which, unless explained or contradicted by other testimony, might well lead a jury reasonably to the conclusion that the whole transaction was a trick, on the part of Wilson, to get the title of Duff for a very inadequate price, and to escape also from his obligation both as assignee in possession of the lease to Smathers, and of his own contract, by which he became surety for Smathers for the rest.

Judgment reversed, and *venire facias de novo* awarded.