Daniel McGranighan, Hugh McGranighan, Julia Mc-
Granighan, Widow of Charles McGranighan, deceased,
and Annie McGranighan et al., Minor Children of
said Charles McGranighan, deceased, by their next
Friend and Mother, Julia McGranighan, *v.* James F.
McGranighan, Michael S. McGranighan, Patrick Mc-
Granighan and John McGranighan, Appellants.

*Tenants in common—Mutual duties of—Purchase at sheriff's sale.*

Where a tenant in common with the acquiescence of his cotenants buys
the joint estate at a sheriff's sale in his own name, he will be adjudged to
hold it as trustee for all the joint tenants, if it appears that he paid for the
property out of the proceeds of a mortgage upon the property itself, and
that he failed to suggest to his cotenants, who were very poor and inex-
perienced in business, this method of saving the property in the interest
of all, but, on the contrary, gives them to understand that only those hav-
ing money could buy.

Argued March 22, 1898.    Appeal, No. 407, Jan. T., 1897, by
plaintiffs, from decree of C. P. No. 2, Phila. Co., June T., 1893,
No. 225, on bill in equity.    Before STERRETT, C. J., GREEN,
WILLIAMS, DEAN and FELL, JJ.    Affirmed.

Bill in equity for a partition.

The facts appear by the opinion of SULZBERGER, J., which
was as follows:

1. On April 24, 1864, Michael McGranighan took title to the
premises described in the first paragraph of the bill, subject to
a yearly ground rent of $36.00, payable to Richard J. Dobbins,
his heirs and assigns, in equal half-yearly payments on the first
day of the months of March and September in each year, redeem-
able on the payment of the principal sum of $600.

2. The said Michael thereupon entered into possession of said
premises and about the year 1868 built a second house at the
corner of 54th and Wyalusing avenue, on said lot.    Into this
second house he removed with his family, leasing thereafter the
first house to his eldest son, Daniel, one of the plaintiffs, at the
rent of $10.00 per month.

3. On October 2, 1888, the said Michael died intestate seized in fee of the said premises, subject to the ground rent as aforesaid, leaving to survive him, his widow, Ann, and seven sons, as follows: Daniel, Hugh, Charles, Patrick, John, James F. and Michael S., to which said sons said premises descended and vested as tenants in common, in fee, subject to the dower right of their mother.

4. In the month of December, 1888, Charles died intestate, seized of his undivided one seventh interest in said premises, leaving to survive him, his widow, Julia, and five children, as follows: Annie, Catherine, Charles, Henry and Frank; all of whom are minors, without guardian.

5. Ann, widow of Michael, the elder, continued to live in the corner house until her death, which took place on April 30, 1892, and Daniel has continued to live in the other house.

6. Daniel paid the rent on his house to his mother during her lifetime except for the last two months, when he was unable by reason of sickness to raise the money.

7. The widow, Ann, at the time of her death owed five half-yearly instalments of ground rent amounting in all to $90.00.

8. Suit was brought for the arrears of ground rent, judgment obtained and execution issued, and on August 1, 1892, the premises in question were sold by the sheriff to James F. McGranighan and Michael McGranighan, the younger, for the sum of $600, and on September 19, 1892, the said sheriff delivered his deed to said vendees, subject to the ground rent.

9. On the same day, September 19, 1892, the owners of the ground rent by deed granted and extinguished the same to the said James and Michael in consideration of $600.

10. On the same day, September 19, 1892, the said James and Michael mortgaged the said premises for $1,600 to the St. Agatha's Building and Loan Association, the mortgage money, as recited in said indenture of mortgage, being advanced to pay the consideration to the sheriff for said premises and the consideration for the extinguishment of the ground rent. In point of fact only $1,200 were applied for these purposes, $195 were used to pay doctor's bill and funeral expenses of the mother, and $205 appear to be unaccounted for.

11. The said James and Michael, claiming the ownership in fee of said premises, instituted proceedings before a magistrate

against Daniel under the act of June 16, 1836, which proceedings have been removed to this court, being the same proceedings which the bill seeks to enjoin.

12. The said James F. and Michael S. have collected and are collecting rent for the corner house.

13. The premises in question have a value of $400 and upwards above the amount of the aforesaid mortgage.

The vital question in the case is whether James and Michael acquired the ownership in fee. If they did, the proceedings sought to be enjoined are entirely correct and the bill must be dismissed. If they did not, they hold merely as trustees for all concerned, and partition should be ordered and an account stated. The law of Pennsylvania was clearly laid down by Mr. Chief Justice LEWIS, in Weaver v. Wible, 25 Pa. 270: "Where several persons have a joint or common interest in an estate, it is not to be tolerated that one shall purchase an incumbrance or an outstanding title, and set it up against the rest, for the purpose of depriving them of their interests. . . . All that can be demanded is contribution from each to the expense of any purchase which releases the common interest from embarrassment." This principle was restated by the Supreme Court in the late case of Powell v. Lantzy, 173 Pa. 543.

The defendants deny the plaintiff's right because they say that:

1. The sheriff's bill for sale was put up on the house in which Daniel lived, and he was going in and out and must have seen it.

2. Before the sheriff's sale John (one of the defendants), said to Daniel and Hugh: "Before I will see it go to sheriff's sale, I will put up my share with any one of you." Hugh says: "I don't want to have a damned thing to do with it; I don't want a dollar out of it; I have my own house and a building association, and it is as much as I can attend to." Michael said to Dan: "There is a lot of bills against it." He says: "Well, I have no money to straighten them." Michael says: "Well, somebody will have to straighten them, a stranger will own it; now I am in a building association, before a stranger will own it, I will bid on it, but if you don't wish that, why here is my book, give me what money I have paid on my book, you go down and I would as lieve you would own it." He says: "No,

I am very glad, Mike, that you are able to buy it.  I would not
like to see it go out of the name.  I would like to see you have
it and I am glad to see that you are able to buy it."

3. Everybody knew of the sheriff's sale.

4. Michael paid $50.00 at sheriff's sale, $25.00 his own and
$25.00 his brother James's.  They borrowed $1,600 on their
shares from the building association, which was applied as fol-
lows :

| | |
|---|---:|
| Purchase money . . . . . . . | $600.00 |
| Principal of ground rent . . . . . | 600.00 |
| Dr. Whiteside's bill for the mother . . . | 85.00 |
| Funeral and tombstone for the mother . . | 110.00 |
| | $1,395.00 |

What became of the other $205 did not appear.

These points made by Michael were substantially reiterated
by James, his narrative, however, varying somewhat in the
details.

The plaintiffs' testimony on the other hand differed materially
on some of these matters.  1. Daniel admits that he knew of
the sheriff's bill, but says that he was confined to his bed.
2. Daniel describes the interview before the sheriff's sale as fol-
lows : " Hugh asked them (the defendants) to put it in the
hands of a trust company, or to the orphans' court; that he was
willing to pay his share of what would be against it, and of
course I acquiesced in what he said, in everything he said, right
by his shoulder, and he said : ' If there is a dollar coming to us,
we want it, and if there is $10.00 in debt we offer to pay it.' "

Daniel denied that any amount of money necessary to be raised
was named ; he denied that the brother offered his building asso-
ciation book, or that it was declined, or that he said that he
would have nothing to do with it.

Assuming for argument's sake that the defendants' statements
on these controverted points are exactly correct, it is difficult to
see how they help the defendants' cause.  The plaintiffs were
not men of much education or knowledge of business affairs.
Daniel is a gardener and Hugh was a fireman, who since the
filing of the bill died in the performance of his duty.  They
were not men of means, but plain laboring men with families

to support.    They had no money to pay the arrears of rent and other liens, and they had not sufficient business knowledge to know how to save their imperiled interests without a considerable outlay.    The third party plaintiffs were the widow and five minor children, of a deceased brother, very poor, and of course, ignorant of business affairs.    What did these cotenants defendants do under the circumstances?    According to their own account they utterly ignored the widow and minor children, and put prominently before the other two plaintiffs the necessity of raising what was to them a considerable amount of money, and all their statements rested on the assumption that some one with money would have to take up the matter, and that the interests of those without money were doomed to be sacrificed.    If in so acting they dealt in good faith and honestly gave their cotenants the best thought they had on the subject a question of some difficulty might be presented.    We have, however, been unable to avoid the conclusion that at the time when the defendants puzzled two of the plaintiffs with the apparently insoluble difficulties of the situation, they had in their minds a method whereby all rights could have been saved with very little trouble, the method, which in point of fact, they promptly adopted.    To us it seems that their bearing towards all the plaintiffs was, to use the language of Chancellor KENT in the somewhat analogous case of Van Horne v. Fonda, 5 Johns. Ch. 388, "repugnant to a sense of refined and accurate justice, . . . . immoral because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties, as joint devisees created. . . . The parties had equal concern which created a mutual obligation, to deal candidly and benevolently with each other, and to cause no harm to their joint interest."    The plaintiffs are therefore entitled to the relief prayed for.

And now, January 2, 1897, the prothonotary will notify the parties or their counsel of the filing of this report and opinion, and if no exceptions are filed thereto within twenty days a decree will be entered according to the foregoing opinion.

The following decree was subsequently entered:

And now, February 24, 1897, no exceptions having been filed to the findings of fact and law in this case within twenty days

from the filing thereof, in accordance with the report and opinion, and on motion of David H. Stone, Esq., solicitor for plaintiffs, it is ordered, adjudged and decreed that the defendants, James F. McGranighan and Michael S. McGranighan, hold the title to the premises described in said bill, acquired by them by purchase at sheriff's sale thereof on August 1, 1892, as trustees for all the parties plaintiff and defendant, as of the shares and interests therein as the same were held by them or the persons through whom they claim immediately prior to said sheriff's sale, subject as respects the said James F. McGranighan and Michael S. McGranighan to the payment of a certain mortgage debt of $1,600 secured upon said premises by indenture of mortgage given by said defendants to the St. Agatha's Building and Loan Association, dated September 21, 1892, recorded at Philadelphia, in mortgage book T. G., No. 211, page 275, etc., and as respects the shares and interests of the other parties to $1,200 of said mortgage debt. And it is further ordered and decreed that an injunction issue to the said defendants, James F. McGranighan and Michael S. McGranighan, perpetually restraining them from further maintaining their action against plaintiff, Daniel McGranighan, for the recovery of said premises as of the term and number of this bill, and from commencing and maintaining any other action for the recovery of possession thereof in their own right based upon their said purchases at said sheriff's sale. And it is further adjudged and decreed that the said James F. McGranighan and Michael S. McGranighan account to the said plaintiffs, for the rents received by them for said premises or any part thereof. And it is further ordered, adjudged and decreed that partition or division of said premises be had and made among all of said parties according to the acts of assembly and the course and practice in equity, and the shares of said parties set out to them in severalty; and Walter George Smith, Esq., is hereby appointed master to state said account and to make said partition, and in case the said premises cannot be divided or parted among said parties without injury to or spoiling the whole, to value the same or convenient purports thereof, and to report his doings to this court for confirmation and further order. [1]

*Errors assigned* among others were (1) the decree of the

court, quoting it; (5) in finding as a matter of law that the appellants were trustees for the complainants.

*Chapman*, of *Chapman & Chapman*, for appellants, cited on the question of trust: Weaver v. Wible, 25 Pa. 272; Duff v. Wilson, 72 Pa. 447; Powell v. Lantzy, 173 Pa. 543; Van Horne v. Fonda, 5 Johnson's Chancery, 388; Mandeville v. Solomon, 39 Cal. 125; Neill v. Shamburg, 158 Pa. 263.

*David H. Stone*, with him *P. J. McManus*, for appellees, cited on the question of trust: Hill v. Meyers, 43 Pa. 170; Sensinger v. Boyer, 153 Pa. 628; Muzzer v. Oliver, 21 Pa. 362; Woods v. Wilson, 37 Pa. 384; Davis v. King, 87 Pa. 261; Lloyd v. Lynch, 28 Pa. 422; Chorpenning's App., 32 Pa. 315; Maul v. Rider, 51 Pa. 377; Tanney v. Tanney, 159 Pa. 277; Edmunds's App., 68 Pa. 31.

PER CURIAM, April 4, 1898:

We are not convinced that the learned court below erred in any of its findings of fact referred to in the second specification, or in its omission to find as complained of in the third and fourth specifications. It is not our purpose, nor is it necessary, to discuss here the evidence on which the court below based its findings. It is sufficient to say, there was testimony to justify them. So far as they are relevant they must therefore be accepted as true; and, on the facts thus established, we are not satisfied there was any error either in the conclusion complained of in the fifth specification or in the decree recited in the first specification.

Finding nothing in the record to justify us in sustaining either of the specifications of error, they are all overruled, the decree affirmed and appeal dismissed at appellants' costs.