No. 22,615.

GERTRUDE E. MOON, as an Individual and as Administratrix, etc., *Appellant*, v. NANCY J. MOON and EDGAR L. MOON, *Appellees*.

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Land—Contract Without Consideration—Findings.* Findings of specific facts relating to consideration for a contract examined, and held to be consistent with a finding of the ultimate fact of no consideration.

2. TENANCY IN COMMON—*When Cotenant May Acquire Full Title by Purchase at Sheriff's Sale.* While it is a general rule that one tenant in common may not, as against his cotenant, acquire sole title to the common property by purchase at a sale made to satisfy a lien existing when they became owners, the cotenant may not desire to. object. He may consent that the purchaser take the full title indicated by master's or sheriff's deed, he may afterwards voluntarily relinquish his interest, and he may lose it by lack of diligence in electing to call on a court of equity to give him the benefit of the purchase.

3. FINDINGS OF FACT—*No Trust Created.* Findings of fact considered, and held not to require the inference that a trust relating to land existed, arising either by operation of law or otherwise.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion filed October 9, 1920. Affirmed.

Moon v. Moon.

*J. J. Schenck,* and *Otis E. Hungate,* both of Topeka, for the appellant.

*Eugene S. Quinton,* and *A. M. Harvey,* both of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The plaintiff appeals from an adverse judgment rendered after a second trial of the cause which was under consideration in the case of *Moon v. Moon,* 102 Kan. 737, 173 Pac. 9.

The petition alleged that on April 22, 1911, the plaintiff's husband, Charles S. Moon, was the owner in fee simple of an undivided one-fourth of land described in the contract executed on that date, which appears in the former opinion; that Charles S. Moon complied with the contract by delivering possession to the vendees; that Charles S. Moon died in September, 1911; that the plaintiff, as his sole heir and as administratrix of his estate, made the necessary tender and otherwise fully performed on her side; that the defendants had not performed the contract, but had repudiated it; and that the defendants had not restored to the plaintiff possession of the land. The plaintiff's tender of deeds was renewed, and the prayer was that the defendants be compelled to specifically perform by payment of the contract price. The general nature of the answers was indicated in the former opinion. The court made very full findings of fact, which, together with the conclusion of law, are appended to this opinion. The plaintiff contends that the thirty-first finding of fact is not sustained by the evidence, and that her motion to set aside the conclusion of law and render judgment in her favor on the findings should have been allowed.

Following a suggestion contained in the former opinion, the plaintiff undertook to show that the consideration for the contract was a compromise of disputed claims. All the evidence on that subject was stated in the findings of fact. The court doubtless concluded that the facts found disclosed nothing more than pressure brought to bear by Charles S. Moon to obtain some kind of a contract from his aged mother. By assuming to have an interest in the land, by threat of suit, and other conduct, he did succeed in bringing the parties to

the contract together. When he had accomplished that he accepted the contract which was executed, but he gave nothing for it, and had nothing to give. There was positive evidence that no money consideration passed, and the court expressly negatived the inference that compromise entered into the contract itself as the vital element of consideration, by finding no consideration at all. It was the duty of the district court to draw the ultimate inference of fact. The one stated is consistent with the specific facts found, and this court is not authorized to interfere.

In the former opinion it was held the recital in the contract that Charles S. Moon was the owner of the land which he purported to sell was open to dispute. If he were in fact such owner, his promise to convey furnished a consideration for the promise to pay. If he were not in fact such owner, there was no consideration for the promise to pay. The court found all the facts on which a claim of ownership may be based. It did not find ownership, and its conclusion of law negatived the validity of any such inference. It found specifically against the claim of possession, on undisputed evidence.

In 1890 Nancy J. Moon and her two sons were tenants in common of the land. The plaintiff argues that the master's sale and deed to Zahner, Zahner's deed to Edgar L. Moon, and Edgar L. Moon's mortgage, were mere devices to protect the title and obtain a new loan sufficient to discharge liens, for the benefit of all the tenants in common; and that one tenant in common may not acquire sole title to the common property through a sale to satisfy a lien. In the plaintiff's brief appears the following:

"In *McGranighan v. McGranighan,* 39 Atl. 951, it is said: 'Purchase of common property by part of tenants in common at sheriff's sale thereof, to satisfy liens, will be held to be for the benefit of all, the purchasers having been able to raise enough to pay the mortgage lien.' This is exactly the case at bar."

The quotation is from the headnote of the report in the Atlantic Reporter, and is garbled. The case was one involving acquiescence induced by imposition on ignorance and poverty, and the full headnote reads as follows:

"Purchase of common property by part of the tenants in common, at sheriff's sale thereof to satisfy liens, will be held to be for the benefit of all, the purchasers having been able to raise by mortgage enough to

pay the liens, and having had this in mind while leading the others, poor and inexperienced in business, to understand that only those having money could save their shares." (*McGranighan v. McGranighan,* 39 Atl. 951.)

The opinion of the court was *per curiam,* and very brief. There was no discussion of legal principles, and the state reporter's conception of the decision was expressed in the following headnote found in the official report:

"Where a tenant in common, with the acquiescence of his cotenants, buys the joint estate at a sheriff's sale, in his own name, he will be adjudged to hold it as trustee for all the joint tenants, if it appears that he paid for the property out of the proceeds of a mortgage upon the property itself, and that he failed to suggest to his cotenants, who were very poor and inexperienced in business, this method of saving the property in the interest of all, but, on the contrary, gives them to understand that only those having money could buy." (*McGranighan v. McGranighan,* 185 Pa. 340.)

The defendant cites the case of *Ladd v. Kuhn,* 27 Ind. App. 535, the syllabus of which reads:

"A surviving husband in possession of lands of his deceased wife as tenant in common with his two children cannot by purchasing the land at a sale under a mortgage executed by himself and wife, acquire title in the lands as against the children." (¶ 3.)

The decision applied the general rule, subject to many exceptions, that one tenant in common cannot, by purchasing a lien, acquire title which will evict a cotenant. The opinion of Chancellor Kent in the leading case of *Van Horne v. Fonda,* 5 Johns. ch. 388, is quoted at considerable length, and a portion of the quotation follows:

" 'I will not say, however, that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit. But when two devisees are in possession, under an imperfect title, derived from the common ancestor, there would seem, naturally and equitably, to arise an obligation between them, resulting from their joint claim and community of interests, that one of them should not affect the claim, to the prejudice of the other. It is like an expense laid out upon a common subject, by one of the owners, in which case all are entitled to the common benefit, on bearing a due proportion of the expense. It is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject, created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself and thus undermine and oust his companion. It would be repugnant to a

sense of refined and accurate justice.' " (*Ladd v. Kuhn*, 27 Ind. App. 535, 543.)

The general rule is designed to protect against evil consequences of breach of confidence, undue advantage, and other unconscionable conduct essentially or actually fraudulent, and is salutary in every respect. In a particular instance, however, there may be no fraud at all. Granting, if a tenant in common purchase at a foreclosure sale, that his title will not be absolute if his cotenant object, the cotenant may not desire to object. He may be unable or unwilling to bear his share of the burden of the lien, and may consent that the purchaser take the full title indicated by master's or sheriff's deed. Likewise, he may afterwards voluntarily relinquish his interest, or he may lose it by lack of diligence in electing to call on a court of equity to give him the benefit of the purchase.

In this instance the evidence failed to disclose the arrangement under which Zahner took a master's deed, and then deeded to Edgar L. Moon, who obtained a mortgage for a sum but a few hundred dollars in excess of liens. Assuming that the titles of Nancy J. Moon and Charles S. Moon were not cut off by what was done, and that they might have asserted those titles against Edgar L. Moon, subject to adjustment of the lien to which their interests were subject, Charles S. Moon conveyed all his interest to his mother by warranty deed on October 5, 1900. Edgar L. Moon joined in the conveyance, and the mother expressly assumed payment of the mortgage. Interpreting the instrument as forming part of a single transaction embracing the deed to Zahner, Zahner's deed to Edgar L. Moon, and Edgar L. Moon's mortgage, Charles S. Moon voluntarily renounced his interest in favor of his mother. The result is, the plaintiff can derive no benefit from application of the principle that generally one tenant in common may not, without consent of his cotenants, acquire sole title to the common property by virtue of purchase at a sale to satisfy a lien.

The plaintiff says that Nancy J. Moon took title to her husband's interest in the land in trust for him, by implication of law. The record indicates that this subject was not brought to the attention of the district court. There was no request for findings relating to existence of a trust, and the absence of such findings is quite conclusive the matter was not considered.

Moon v. Moon.

If it were, the findings which were made exclude a trust aris-
ing by implication of law. For the purpose of this appeal there
are no facts except those found by the trial court (*Shuler v.
Lashhorn*, 67 Kan. 694, 74 Pac. 264), and there is no finding
that a confidential relation existed between the parties to the
Charles S. Moon deed when it was made, or that the transac-
tion was induced by such a relation, or was for any kind of
trust purpose. The circumstance that the deed was between
parent and child and without consideration was not enough.
This subject was considered at length in *Silvers v. Howard*,
106 Kan. 762, 190 Pac. 1.

The plaintiff says the contract of 1911 constituted a decla-
ration of trust, or at least an acknowledgment of trust. The
statement cannot be made as a matter of law. It expresses an
inference of fact, and an inference of fact which the court did
not approve. To give the contract the effect claimed for it
would be to contradict the unequivocal terms of the deed of
October 5, 1900. The plain meaning of the transaction which
culminated in that deed was that the widow was to have the
land saved from her deceased husband's estate. The plaintiff
says the land was worth $20,000 at that time. The finding is
that the plaintiff's father, testifying nearly twenty years later,
said it was worth from $15,000 to $20,000, which was all the
evidence on the subject. There was no evidence that the
widow and children knew or believed the land possessed any
such value. It was subject to a mortgage of $4,000. There is
no finding that the widow owned anything in the world except
a half interest in the land. She was fifty-five years old. If her
boys made provision for her declining years by deeding her the
land, she assuming the mortgage, they did a filial and com-
mendable thing.

The judgment of the district court is affirmed.

FINDINGS OF FACT.

1. Elisha G. Moon died intestate December 4, 1896, seized
and possessed of the northwest quarter of section sixteen (16),
the northeast quarter of section seventeen (17), the southeast
quarter of section eight (8), and the southwest quarter of sec-
tion nine (9), all in township twelve (12), range fourteen (14),
Shawnee county, Kansas, and left surviving him as his sole

and only heirs at law, Nancy J. Moon, his widow, and his two sons, Edgar L. Moon and Charles S. Moon. On the —— day of ————, 1897, Nancy J. Moon was appointed and duly qualified as administratrix of the estate of Elisha G. Moon, deceased, in the probate court of said county.

2. Prior to the death of Elisha G. Moon and on the 6th day of December, 1888, said Elisha G. Moon executed and delivered to the Northwestern Mutual Life Insurance Company his bond in the sum of $14,000, conditioned that he should pay to said company the sum of $7,000 in specified installments within five years after date, in controversy herein. At the time of the execution of this mortgage said family, composed of Elisha G. Moon, Nancy J. Moon, Edgar L. Moon, and Charles S. Moon, resided on the southeast quarter of section 8, occupying the same as their homestead.

3. That on or about April 21, 1894, one Calvin S. Shriver obtained judgment in the district court of Shawnee county, Kansas, against Elisha G. Moon and Nancy J. Moon for the sum of $4,092, with interest at the rate of twelve per cent, and costs of suit, which judgment became a lien upon the northwest quarter of section 16 and the northeast quarter of section 17, subject to the mortgage of the Northwestern Mutual Life Insurance Company.

4. On March 24, 1896, Elisha G. Moon had paid the sum of $4,000 on the mortgage of $7,000 to the Northwestern Mutual Life Insurance Company, and on that date said company, Moon and his wife, and Calvin S. Shriver, the judgment creditor, entered into an agreement extending the time of payment of said insurance company mortgage to the 6th day of December, 1897, said mortgage to continue as a lien prior to the judgment of said Shriver.

5. At the time of the death of Elisha G. Moon, the southeast quarter of section 8 and the southwest quarter of section 9, hereinbefore described, were encumbered by a mortgage to one D. A. Woodbury, who subsequently began suit in the United States circuit court, and obtained judgment in the sum of $8,643 and a decree of foreclosure. Subsequently and on November 15, 1897, Nancy J. Moon, Edgar L. Moon and Charles S. Moon executed and delivered to said D. A. Wood-

Moon v. Moon.

bury their quitclaim deed for said land in sections 8 and 9, in full satisfaction of said indebtedness.

6. Nancy J. Moon, Edgar L. Moon and Charles S. Moon surrendered possession of the premises described in finding No. 5 about March 1, 1898, and moved into rented premises, where they resided together until November, 1899, when they moved into a house on the northwest quarter of section 17, being part of the land in controversy herein.

7. On February 1, 1899, the Northwestern Mutual Life Insurance Company began suit in the circuit court of the United States for the district of Kansas against Nancy J. Moon, Nancy J. Moon as administratrix, Edgar L. Moon, Charles S. Moon, and Calvin S. Shriver, and many others, upon the bond and mortgage set out in finding No. 2, praying foreclosure and judgment. On July 1, 1899, Calvin S. Shriver filed his answer and cross bill in said case, setting up a balance due on his judgment against Elisha G. Moon and Nancy J. Moon in the sum of $1,058, with interest at twelve per cent, praying that said judgment be declared a lien upon the property herein in controversy, and that said property be sold to satisfy the same; and that Nancy J. Moon, and Nancy J. Moon as administratrix, and Edgar L. Moon and Charles S. Moon each filed, by their attorneys, an answer to the said answer and cross bill of the said Calvin S. Shriver, in which they allege that said Shriver's judgment was not a lien on the northeast quarter of section 17, for the reason that said defendants and each of them claimed, occupied and lived upon said premises as their homestead. On November 27, 1899, and on August 4, 1900, a decree was entered in said case in favor of the Northwestern Mutual Life Insurance Company and Calvin S. Shriver upon his cross bill against Nancy J. Moon, and Nancy J. Moon as administratrix, in the sum of $3,217.66, with interest in favor of the plaintiff, the Northwestern Mutual Life Insurance Company, and a further decree in the sum of $1,400 in favor of Calvin S. Shriver upon his said cross bill, decreeing foreclosure and sale of the lands, to wit, the northwest quarter of section 16 and the northeast quarter of section 17, being the land in controversy herein. Said decrees are hereby referred to and made a part hereof.

8. On August 8, 1900, Harry Bone, special master in

chancery, offered for sale and sold the land included in the mortgage and decree, set out in finding No. 7, at which sale the northwest quarter of section 16 was sold to Augustus Zahner for $1,469.71, and the northeast quarter of section 17 was also sold to Augustus Zahner for $2,100, making a total sale price of $3,569.79, said sum being the amount of plaintiff's judgment, interest, and cost, as shown by the master's report of sale.

9. At the date of said master's sale the premises sold were reasonably worth the sum of from $15,000 to $20,000, as shown by the testimony of the witness Purdy, the father of the plaintiff herein, and the only witness who testified as to such value.

10. Harry Bone, special master, filed his report of sale on August 8, 1900, and the same was confirmed by the court on August 28, 1900, and a master's deed for said land executed and delivered to said Augustus Zahner. Said confirmation of sale is hereby referred to and made a part hereof.

11. At the time said premises were bid in by Augustus Zahner he was the general loan agent of the Union Central Life Insurance Company in Kansas, and in bidding in the land he did so with no intention of making a personal investment, or of holding the land, but did so for some purpose in connection with a loan to be made thereon by his company, the Union Central Life Insurance Company, the nature and details of which transaction said Augustus Zahner was unable to recall, and which are not otherwise disclosed by the evidence. Said Augustus Zahner never did know or was acquainted with Charles S. Moon, and never did know or was acquainted with Nancy J. Moon, until several years after the sale of the property by the said special master, Harry J. Bone.

12. On September 8, 1900, Augustus Zahner and wife executed a special warranty deed for said land to Edgar L. Moon, for an expressed consideration of one dollar.

13. On September 10, 1900, Edgar L. Moon executed and delivered to the Union Central Life Insurance Company a mortgage for $4,000 on the land in controversy.

14. Augustus Zahner filed his master's deed for record in the office of the register of deeds of Shawnee county, Kansas, on September 12, 1900, at 11:45 a. m., his deed to Edgar L.

Moon at 11:50 a. m., and the mortgage of Edgar L. Moon to the Union Central Life Insurance Company at 11:55. a. m. on said date.

15. On October 5, 1900, Edgar L. Moon and Charles S. Moon executed and delivered to Nancy J. Moon a warranty deed for the land foreclosed, sold, and deeded as hereinbefore found, for a recited consideration of one dollar and other valuable considerations, and by the terms of which deed said grantee assumed and agreed to pay the mortgage of $4,000 executed by Edgar L. Moon to said Union Central Life Insurance Company. Nothing was paid by Nancy J. Moon to Edgar L. Moon or Charles S. Moon for said deed.

16. From about November, 1899, until some time during the years 1900 or 1901, Nancy J. Moon and her two sons, Edgar L. Moon and Charles S. Moon, lived upon the land in sections 16 and 17, being the land involved in this controversy, at which latter time Charles S. Moon left home and went to Arizona, where he remained for about six months, and then located in Topeka, Kan. In 1902 Charles S. Moon married the plaintiff, Gertrude E. Moon, and lived with her at Topeka, where he was employed as an electrical worker, until February, 1910, when they went to Davenport, Iowa, to reside. They remained at Davenport until the spring of 1911, when they returned to Topeka, where they lived together as man and wife until the death of Charles S. Moon, on the 29th day of September, 1911. Charles S. Moon died intestate, leaving as his sole and only heir at law, Gertrude E. Moon, his wife.

17. That since October 5, 1900, the date of the conveyance of the land in controversy by warranty deed executed by Edgar L. Moon and Charles S. Moon to Nancy J. Moon, or very shortly thereafter, the said Nancy J. Moon has been in the sole exclusive possession of said property, and the said Nancy J. Moon has never sold, transferred or conveyed any interest in said property to any one, except by mortgages executed to the Union Central Life Insurance Company, which are now a lien upon said property, and no interest of any [other] nature whatever has been acquired by any one in said property by legal proceedings or otherwise, but in the exclusive exercise of her ownership and possession on the 27th day of April, 1905, she executed a mortgage in the sum of

$1,000 to the Union Central Life Insurance Company upon said property, and upon August 2, 1910, she executed a mortgage in the sum of $4,000 in favor of the Union Central Life Insurance Company upon said property, and on February 8, 1911, she executed a mortgage in the sum of $500 to the Union Central Life Insurance Company upon said property, and in addition thereto a commission mortgage for the payment of the commissions for each one of the mortgages.

18. In the fall of 1904 Charles S. Moon had a conversation with Nancy J. Moon at his home, 630 Jefferson street, in which conversation Charles S. Moon asked his mother what she thought about selling eighty acres of the farm so he could get his money out of it, as he wanted to buy a home. Nancy J. Moon replied that she would talk to Ed about it when she went home.

19. A short time after the conversation set out in finding No. 18, Charles S. Moon received through the mail the following letter from Edgar L. Moon:

"NOVEMBER 27, 1904.

*"Charles:* I have three parties at the present time to work on to buy the farm. Rather think I will make a deal. Expect to sell for less than $16,000. Don't price the farm in separate quarters, as I do not care to sell that way. The whole place must be sold. ·        Yours,        ED.

"Mother says to tell you that she will not be in town until next week, probably Monday."

20. Several weeks after the conversation set out in finding No. 18, in conversation had between Charles S. Moon and Nancy J. Moon, Charles S. Moon asked his said mother "What Ed thought about it," and Nancy J. Moon replied, "Mr. Quinton advised them to hold onto the place and not to sell it."

21. In a conversation between Nancy J. Moon and Charles S. Moon in February, 1910, Charles S. Moon said to his said mother, "Mr. Quinton said he never had advised them to hold the place," to which his mother replied, "He did, too." To this remark Charles replied that if she or Ed said that, they were story tellers.

22. In a conversation had at the home of Nancy J. Moon in Topeka, about a week before the contract in suit was executed, Charles S. Moon asked his mother if she and Ed had decided what they were going to do with the farm. Nancy J. Moon replied that Ed was out of town, but she expected him in any

day, and she would talk to him about it. Charles S. Moon asked his mother to talk it over with Ed so they could dispose of the farm, and she replied that she would do so, and expected him in the next evening. Charles S. Moon then said that he wanted to get his money out of the place to buy a home.

22½. In the conversation held between Nancy J. Moon and Charles S. Moon at the residence of the former, and on the evening before the contract in suit was entered into, Charles S. Moon said to his mother, "Well, mother, if you don't talk with Ed about this now, and come to some settlement with me, I am going to start a suit for my share in that place." Nancy J. Moon replied she was sure Ed would be in and she would talk to him.

23. On the morning of April 22, 1911, by arrangement between them, Nancy J. Moon, Edgar L. Moon, Charles S. Moon, and Gertrude E. Moon, met at the office of Eugene Quinton, lawyer, and then and there entered into the contract set out in the petition herein, which is hereby referred to and made a part of this finding.

24. After the death of Charles S. Moon, in September, 1911, and before his funeral, Nancy J. Moon stated to the brother of Gertrude E. Moon and also to her father, that she, Nancy J. Moon, was glad that she had got her business settled with Charles before his death.

25. After the death of Charles S. Moon, Gertrude E. Moon, his widow, was appointed administratrix of his estate by the probate court of Shawnee county, Kansas, and is now the duly appointed, qualified, and acting administratrix of said estate.

26. On November 13, 1913, Gertrude E. Moon, as administratrix of Charles S. Moon, deceased, filed her petition in the probate court of Shawnee county, Kansas, setting up the contract in suit, and praying for an order authorizing her as administratrix to perform said contract specifically, by executing and delivering to Nancy J. Moon and Edgar L. Moon, an administrator's deed for the premises described in said contract. Said petition is hereby referred to and made a part hereof.

27. A copy of said petition, with notice that a hearing thereon would be held on January 6, 1914, was personally served on Nancy J. Moon and Edgar L. Moon, on December 10, 1913.

28. A hearing was had on said petition on January 5, 1914, and said administratrix was ordered to execute and deliver a deed as prayed for. Neither Nancy J. Moon nor Edgar L. Moon appeared at said hearing, either in person or by attorney.

29. Thereafter, Gertrude E. Moon executed and acknowledged a general warranty deed to Nancy J. Moon and Edgar L. Moon, and as administratrix of the estate of Charles S. Moon, deceased, executed and acknowledged a good and sufficient administrator's deed to Nancy J. Moon and Edgar L. Moon for the land described in said contract in controversy herein, and duly tendered the same to said Nancy J. Moon and Edgar L. Moon, and made demand upon them for the payment of $5,000, the price fixed in said contract, and said Nancy J. Moon and Edgar L. Moon refused to accept said deeds and to pay said sum of $5,000 to Gertrude E. Moon.

30. On April 22, 1911, the land in controversy was of the reasonable value of $25,000, as appears from the testimony of Mr. Purdy, the father of plaintiff, and the only witness testifying on that subject, and said land at that time was incumbered in the sum of about $5,000.

31. That there was no consideration passed from Charles S. Moon, or Gertrude E. Moon, his wife, to the said Nancy J. Moon or Edgar L. Moon, or either of them, for the execution of the contract sued on in this case.

### CONCLUSION OF LAW.

From the foregoing findings I conclude that plaintiff is not entitled to recover anything in this action, and judgment will therefore be for the defendants for costs.

ROBERT D. GARVER, *Judge.*