Claar, Appellant, *v.* Burket.

Argued October 4, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Alexander A. Notopoulos,* with him *Amos Davis,* for appellant.

*Blair L. McKillip, Jr.,* with him *Frank B. Warfel,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 18, 1957:

Catherine F. Claar as administratrix d.b.n.c.t.a. of the Estate of Abram M. Burket, deceased, brought an action in ejectment against A. Homer Burket for four lots of ground on which seven dwellings were erected. Trial of the case resulted in a jury verdict in plaintiff's favor, together with an award of mesne profits, in the amount of $5,548. The court below sustained the defendant's motion for judgment n.o.v. and entered judgment for the defendant from which plaintiff appeals.

Abram Burket died testate on August 1, 1923, a resident of Claysburg, Blair County, Pennsylvania, seised in fee of many parcels of real estate of which the land in question was a part. He was survived by his widow who died two or three years later, and by eight sons, one of whom is the defendant, A. Homer Burket. All of the sons survived the testator and it is not disputed that under the terms of testator's will they became en-

titled in equal shares to the testator's residuary estate which included his real estate.

Three sons, Watson E., G. Ira and H. Claude, were appointed executors in the will and they were given power to sell real estate. Watson E. Burket died in 1928, G. Ira Burket died in 1940, and H. Claude Burket, the surviving executor, died November 19, 1951. Letters of administration d.b.n.c.t.a. were granted to the plaintiff, Catherine F. Claar, on December 10, 1951. She was the daughter of Charles Burket, one of the testator's sons, and the niece of the last surviving executor, H. Claude Burket. It does not appear that any of the testator's real estate was sold by the named executors, but in 1927 there was an amicable partition or division of some of it agreed upon. In accordance therewith conveyances to those entitled were in many instances belatedly made. Plaintiff testified that some of those entitled had not received their shares of the real estate so partitioned and divided at the time of her appointment as administratrix in 1951, and that in some instances a son had died and his share of the real estate in this partial distribution was conveyed to his widow or children.

The plaintiff established that the property in dispute was acquired by the testator during his lifetime and claimed that he died seised thereof so that it was the property of the estate. On the other hand defendant claimed that he received the property in dispute as his share under the family agreement of partition or division of part of the real estate, by deed duly executed and acknowledged by H. Claude Burket, surviving executor, on January 14, 1941. This deed was introduced into evidence together with another deed of the same property dated and acknowledged August 27, 1952 in which A. Homer Burket and Maude M., his wife, for a recited consideration of $5,000 conveyed the property

to Kenneth C. Burket and wife. Kenneth C. Burket was the son of H. Claude Burket. Homer had lived in Sebring, Florida for a number of years. On behalf of the defendant evidence was introduced that Claude, the surviving executor, visited his son, Kenneth, at Sebring where Kenneth also was then living; that Kenneth took his father to the Florida notary public who took his father's acknowledgment to the deed of January 14, 1941 to Homer. Kenneth Burket further testified that Homer was indebted to his father in the sum of about $5,000 and that in 1947 he saw the deed to Homer in the latter's possession when Claude visited Homer in Sebring, and on that occasion and in Kenneth's presence it was agreed by and between Homer and Claude that Homer would transfer the property he had received as his share in the amicable division to Claude in consideration of the cancellation by the latter of the indebtedness which Homer owed Claude individually; that Homer then stated to Claude: "They are your properties. You go ahead with them. You take care of all rents and so on and they are your rents." However, a deed for the property in consummation of this agreement was not delivered to Claude prior to the latter's death in 1951; that thereafter Kenneth who had returned to Claysburg to live went to Florida and called on his uncle Homer who then executed the deed of August 27, 1952 to Kenneth who had an understanding with his brother and sisters that he, Kenneth, would take title to the property and give them the shares to which they were entitled by inheritance from their father, Claude; Kenneth testified that this agreement had been substantially carried out by payments to his brother and sisters. He also testified that when he received the deed to himself and wife he also received from his uncle the deed from Claude to Homer and that he thereafter recorded both deeds at Clays-

burg on April 30, 1954. This was confirmed by the record in the office of the recorder of deeds, which showed that the deeds had been deposited by Kenneth who paid the recording fees.

During the presentation of her case the plaintiff identified and admitted that the signature of H. Claude Burket on the deed by him as surviving executor to the defendant was in his handwriting, and neither the acknowledgment nor the recording was attacked or disputed. The deed which was attested by two subscribing witnesses, recited a nominal consideration only of $1.00 which was consistent with the defendant's testimony that it was delivered to him as a conveyance of his distributive share under the amicable division of the real estate. When introduced into evidence by the defense, it constituted prima facie evidence of title in the defendant, A. Homer Burket, and the burden of proof shifted to the plaintiff.

While appellant's position is not too clearly presented, it appears to be that the deed to the defendant never became legally operative through non-delivery, or if effective to pass a legal title, that the deed did not convey the equitable title because of fraud in the procurement, resulting in the grantee holding a bare legal title, with the equitable title held in trust for the grantor.

The burden of overcoming the presumption of delivery of a deed resulting from its recording is upon the person attacking its validity and requires clear, positive proof that no delivery was intended and that the recording was unauthorized: *Stiegelmann et al., Exrs. v. Ackman et al.*, 351 Pa. 592, 596, 41 A. 2d 679. And delay in recording is not in itself sufficient to rebut the presumption of delivery: *Cray Estate*, 353 Pa. 25, 44 A. 2d 286. In *Cragin's Estate*, 274 Pa. 1, 5, 117 A. 445, we said: ". . . Where we have, as here, a deed,

absolute and complete in itself, attacked as being in fact otherwise intended (to take effect after death), there is a further presumption that the title is in conformity with the deed, and it should not be dislodged except by clear, precise, convincing and satisfactory evidence to the contrary. It is not enough that it may satisfy a jury, if the question were to be submitted to it, but it must also satisfy the mind and conscience of the court as a chancellor, sitting and reviewing the testimony. If the evidence fails to satisfy in this respect, the instrument should be unhesitatingly upheld." See also *Chambley et al. v. Rumbaugh et al.*, 333 Pa. 319, 5 A. 2d 171; *Stiegelmann et al., Exrs. v. Ackman et al.*, supra. In *Wosche v. Kraning*, 353 Pa. 481, 483, 46 A. 2d 220, it was stated: "In order to establish, by oral testimony, a resulting trust in real estate against the person holding the legal title the evidence must be 'clear, explicit and unequivocal' or, as it has been otherwise stated, 'clear, precise and unequivocal' or 'clear, precise, convincing and satisfactory' or 'clear, precise and convincing' or 'clear, precise and indubitable'. . . ."

In contending that the evidence was sufficient to meet the heavy burden of proof imposed on her, appellant-plaintiff relies on alleged oral statements made by the defendant deemed to be inconsistent with his claim of title, on some rent receipts given to tenants of the property in dispute and on two letters written by an attorney for the defendant. After testifying to what the testator's other sons or their heirs had received pursuant to the amicable partial division of the real estate, plaintiff was asked what the defendant received. Her answer, partly responsive and partly volunteered, was: "He didn't receive anything. He was there at the time and he said he had gotten his share before and he didn't want anything." Plaintiff did not testify that she was there "at the time" of the amicable agree-

ment of distribution which was 14 years before she became administratrix, and no one of the other distributees or their heirs was called in corroboration of this alleged relinquishment by defendant of his share of the real estate divided. There was no evidence that the defendant had received any share of the estate, real or personal, prior to the amicable partition. Such evidence, if it existed, should have been readily available to plaintiff as administratrix of the estate. And indeed the plaintiff testified that there had been no distribution of any of the real estate prior thereto. The other declarations relied on were statements alleged to have been made by the defendant in 1949 when appellant, her husband, her brother and sister-in-law called on defendant at his home in Florida. Appellant testified that on this occasion he (Homer) said he "had never received anything" from the estate. This statement attributed to the defendant of course was diametrically opposed to that above quoted that he (Homer) had said "he had gotten his share" before the amicable distribution. Appellant's brother testified that on this visit to Florida in 1949 he ". . . asked Homer what he was going to do with his properties up here." and that Homer said ". . . he had nothing up here and if he did he wanted them to go back to the estate."; plaintiff's sister-in-law testified to like effect. These declarations testified to by the appellant's brother and sister-in-law differed from both of the declarations testified to by the appellant. Moreover, in 1949 when the alleged statement was made by defendant that he didn't have any real estate in Claysburg, the defendant had, according to Kenneth Burket, transferred all equitable interest in the property under his agreement with H. Claude Burket. Although the transfer had not been formally executed by deed, he could well have considered that he did not have any estate properties in 1949.

As stated in Henry's Pennsylvania Evidence, Vol. 1, §75, p. 104: "Evidence of oral admissions should be received with great caution and scrutiny, not only because of the fact that the meaning of the party making them may have been misunderstood by the witness, but also because of the danger of error in repetition. The need for caution is especially great where the person who made the admission is dead or a considerable period of time has elapsed. . . ." The varying declarations testified to by the appellant and her brother and sister-in-law will not withstand a cautious scrutiny and are clearly insufficient to overcome defendant's title to the property established by the deed.

The rent receipts relied on by appellant were given to various tenants of the houses on the property in dispute during the years 1948 to 1953. Prior to the deed from Homer to Kenneth, dated August 27, 1952, these receipts were given in the name of "Abram Burket Estate" and initialed "H.C.B." (H. Claude Burket) or "J.B.W." (Janet B. Williams) or "K.C.B." (Kenneth C. Burket) and in one instance "Abram Burket Estate by Ralph Williams". Following the deed to Kenneth the receipts were signed "A. H. & M. Burket" and initialed by Kenneth. All of the rent receipts introduced into evidence were issued subsequent to 1947 when, as Kenneth testified, the agreement was entered into between his father, Claude, and Homer, under which Claude became entitled to the rents. Plaintiff's contention is that the rent receipts issued in the name of the estate by Claude or by his daughter, Janet B. Williams, and his son, Kenneth C. Burket, who assisted their father in the collection of the rents, indicated that the lessor was the Abram Burket Estate and that the ownership of the property remained in the estate, and at the same time contradicted Kenneth's testimony that the rents were assigned to his father in 1947. How-

ever, Janet B. Williams, called by the plaintiff, when asked why she signed rent receipts in the name of Abram Burket Estate, said that anything not owned personally by her father, Claude, was signed "Abram Burket Estate"—". . . It was just always done that way and we just kept doing it that way." As before stated, Claude did not become the record owner of the properties in dispute because of his death before Homer had fully carried out the agreement made in 1947. There was introduced into evidence a written authorization signed by A. Homer Burket and his wife, dated September 19, 1951, which authorized Janet B. Williams or her husband, Ralph Williams, to collect the rents and give necessary receipts for the same. It appears that this authorization was executed because of confusion among the tenants as to whom they should pay their rents resulting from demands made by the plaintiff-appellant. Whoever collected the rents or in what manner receipts therefor were issued, there was no credible evidence that the rents collected during the years in which the receipts were given were paid into the Abram Burket Estate. The plaintiff, who became administratrix in 1951, testified that she had attempted to collect rents for the estate but was unsuccessful. On the other hand, Kenneth, Janet Williams and Ralph Williams testified that after the 1947 agreement between Homer and Claude, the rents collected by them were turned over to Claude Burket until his death and thereafter put into the H. Claude Burket Estate account. Moreover there was no evidence that the defendant, Homer Burket, knew in what manner the rent receipts were issued. Although somewhat confusing, a careful consideration of the testimony as to the rent receipts cannot be said to have supported plaintiff's contention with respect thereto.

The two letters relied on by plaintiff in her attempt to meet her burden of proof were letters dated September 11, 1952 written by an attorney on behalf of the defendant, one directed to the plaintiff-appellant as administratrix complaining of a letter sent by her attorney to the tenants advising them not to pay any rent to Mr. and Mrs. Williams who had written authorization from Homer to collect the rents, and the other to one of the tenants which referred to the letter sent out by plaintiff's attorney and advising that the tenants' rent should be paid to either Mr. or Mrs. Williams. Both letters asserted that the Abram Burket Estate had no interest in the properties in dispute. Appellant apparently attempts to use these letters to impeach Kenneth C. Burket's testimony as to the agreement made between Claude and Homer in 1947 in that the letters indicate that Homer claimed ownership even after the date of the deed to Kenneth. The deed to Kenneth was dated August 27, 1952, but it appears that it was not delivered to Kenneth until three months after its date and acknowledgment because the Florida clerk's certificate certifying to the authority of the notary public who took the grantors' acknowledgment is dated December 3, 1952. It also appears from the testimony that Janet Williams advised Kenneth that she was having trouble collecting the rents and that these letters were written in the names of Homer Burket and wife because their names appeared as grantees on the original deed of December 14, 1941 which was exhibited to the tenants as proof that the Abram Burket Estate was not entitled to the rents but that they should be paid to Mr. and Mrs. Williams under the written authorization given them by Homer and his wife.

We have thoroughly reviewed and carefully considered the record in this case in the light most favorable to the plaintiff-appellant as we are required to do, and

586

are satisfied that she failed to meet the burden of proof imposed on her to overcome defendant's acquisition of title by the deed of January 14, 1941. Without resort to the defendant's testimony of actual delivery, there certainly was no testimony of the "clear, positive" character required to overcome the presumption of delivery arising from the duly executed, attested, acknowledged and recorded deed; and the evidence relied on by plaintiff as establishing fraud in the procurement of the deed thereby resulting in the property conveyed being held in trust for the grantor, is far from being "clear, precise and convincing", the caliber of proof essential to upset the written instrument.

We agree with the statement in the opinion of the court below that a verdict for the defendant should have been directed. Consequently judgment n.o.v. was properly entered.

Judgment affirmed.