J-A16032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALONZA BAKER TOLO PROPERTIES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSIE BROWN AND BLESSING REAL ESTATE AND MANAGEMENT, LLC AND MARSTON STREET HOLDING, LLC AND CHEREE CLARK AND JAMES KENT | : | No. 2248 EDA 2021 |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BLESSING REAL ESTATE AND MANAGEMENT, LLC | : | |

Appeal from the Judgment Entered February 7, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  180501431

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED AUGUST 1, 2022**

Blessing Real Estate and Management, LLC (Blessing Real Estate)

appeals from the judgment[1] entered in the Court of Common Pleas of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Blessing Real Estate purported to appeal from the September 20, 2021 order denying its post-trial motions.  On February 2, 2022, this Court issued a Rule directing Blessing Real Estate to praecipe the trial court prothonotary to enter final judgment on the trial court's decision.  **See Fanning v. Davne**, 795 A.2d 388, 391 (Pa. Super. 2002), *appeal denied*, 825 A.2d 1261 (Pa. 2003) (reiterating that appeal properly lies from judgment entered after trial court's disposition of post-trial motions).  On February 7, 2022, judgment was
*(Footnote Continued Next Page)*

Philadelphia County (trial court) in favor of Tolo Properties, LLC (Tolo) in this quiet title action. Blessing Real Estate argues that the court erred in failing to exclude testimony on the basis of Dead Man's Statute;[2] finding that the deed to Jessie Brown (Brown) was void; and that Blessing Real Estate had no interest in the subject property at 1516-18 Marston Street in Philadelphia (the Property).[3] We affirm.

## I.

## A.

On May 6, 2018, Alonza Baker, Jr. (Alonza Jr.), administrator of the estate of Catherine Baker (Baker Jr.) filed a complaint to quiet title to the Property. The court held a hearing on June 29, 2019, at which it heard the testimony of Baker Jr.; David Champagne (Champagne), the sole owner of Tolo; Marcder Guerrier (Guerrier), owner of Blessing Real Estate; F. Scott

_____

entered in the trial court and, therefore, we will treat this appeal as timely filed after the judgment's entry. **See** Pa.R.A.P. 905(a)(5).

[2] Tolo maintains that any Dead's Man Act issue is waived because it was not properly raised. However, at the commencement of Baker Jr.'s testimony, counsel for Blessing Real Estate raised a Dead Man's Act objection, stating he intended to raise it in objection to some questions offered by Tolo's witnesses. The trial court stated that there would be a continuing objection that it would deal with as the case proceeded. (**See** N.T. Trial, 6/29/19, at 24-25). Both Brown's estate and Blessing Real Estate renewed the objection several times throughout the testimony. (**See id.** at 41, 45, 64, 141). We conclude this was sufficient to preserve the issue.

[3] The Property is a large garage that can hold approximately 20-25 cars. (**See** N.T. Hearing, 6/29/19, at 48, 107).

Donahue, Esquire (Donahue), representative of the Brown estate; and James Kent (Kent).

**1.**

Baker Jr. testified regarding the chain of title that led to the Tolo deed. He stated that he is the adult child of Catherine and Alonza Baker, Sr. (Baker Sr.). (**See** N.T. Trial, 6/29/19, at 30). He identified his birth certificate and stated that his siblings are Gloria, Sam, Terry and Bayne Baker. (**See id.**); (Tolo Exhibit 5). Regarding the Property's prior deeds, he testified as follows:

- By deed executed on May 15, 1980, Catherine Baker, Baker Sr. and Derrick Hart held title to the Property as tenants in common, with the Bakers holding a fifty percent interest and Derrick Hart holding a fifty percent interest. (**See** N.T. Trial, at 31); (Tolo Exhibit 1).

- Baker Sr. died on May 10, 1998, and his fifty percent interest passed to Catherine Baker as a matter of law. (**See** N.T. Trial, at 32).

- Catherine Baker died on January 4, 2013. (**See id.** at 32). On January 30, 2013, Baker Jr. was granted letters of administration for his mother's estate. (**See** Tolo Exhibit 6).

- Derrick Hart died on October 25, 2008, passing his fifty percent interest in the Property to his lawful heirs. After Hart's passing, James Kent petitioned for letters of administration of Derrick Hart's Estate, representing himself as Hart's nephew. (**See** N.T. Trial, at 34). After litigation regarding the appointment of an estate administrator, the orphans' court granted letters of administration to Derrick Hart's daughter Cheree Clark. (**See id.** at 33); (Tolo Exhibit 4).

Under the chain of title as of 2013, the estates of Derrick Hart and Catherine Baker owned the Property, with each owning a fifty percent interest.

(*See* N.T. Trial, at 33). On January 11, 2019, Baker Jr. and Cheree Clark met with Champagne and transferred the Estates' interests in the Property to Tolo. (*See* N.T. Trial, at 42-43); (Tolo Exhibit 10).

**2.**

The other chain of title began on August 22, 2013, where Brown, purporting to be the sole heir of the estate of Catherine Baker, recorded an August 13, 2013 deed transferring title of the Property from himself as sole heir to himself individually. (*See* N.T. Trial, at 38-39); (Tolo Exhibit 7). Baker Jr. testified that Brown was not an heir of Catherine Baker, none of the Baker siblings knew him and the transfer was not authorized by Alonza Jr. (*See* N.T. Trial, at 38-39). On October 28, 2013, a deed transferring title of the Property to from Brown to Blessing Real Estate was filed. (*See id.* at 40); (Tolo Exhibit 8). On June 8, 2017, a deed transferring title from Blessing Real Estate to Kent in consideration of $10,000.00 was recorded. The deed had an illegible signature. (*See* Tolo Exhibit 9). Under this purported chain of title, Blessing only has a claim to one-half of the Property.

**3.**

Champagne testified that he is the sole member and owner of Tolo. Prior to Champagne entering into an agreement of sale for the Property on behalf of Tolo with the estates, he testified that Kent harassed Champagne's attorney, putting him in fear of his life if the sale went forward. (*See* N.T. Trial, at 66). However, after conducting title research, he was confident that

the Catherine Baker and Derrick Hart estates owned the Property. He saw the letters of administration appointing Alonza Jr. and Cheree Clark as the administrators of the estates and was certain they had the authority to execute a deed for the Property. (*See id.* at 65, 67, 71); (Tolo Exhibit 10).

On October 11, 2019, Champagne, on behalf of Tolo, signed the agreement of sale for the Property and the deed was recorded. (*See* N.T. Trial, at 67-70); (Tolo Exhibit 10). According to the deed, Tolo paid $80,000.00 for the Property and ultimately took over as the plaintiff in this matter. (*See* N.T. Trial, at 69); (Tolo Exhibit 10).

**4.**

Guerrier testified that he owns Blessing Real Estate. (*See* N.T. Trial, at 105). He stated that Brown came into his car repair shop and told him that he owned a garage property that was for sale. (*See id.* at 106, 109-11). Guerrier's inspection of the Property revealed that it had no roof, a damaged door and debris. A vehicle was abandoned inside. (*See id.* at 107). Guerrier testified that he paid Brown $5,000.00 for the Property ($4,000.00 check; $1,000.00 cash). (*See id.* at 108); (Blessing Exhibit 4). However, the September 12, 2013 deed between Brown and Blessing Real Estate recorded on October 28, 2013, lists the consideration paid as $1.00. (*See* N.T. Trial, at 111); (Tolo Exhibit 8). Blessing Real Estate made repairs to the Property and paid the Property's outstanding real estate taxes in the amount of $19,946.66, saving it from a tax sale. (*See* N.T. Trial, at 112-13, 115).

Guerrier began receiving threatening phone calls that he should not go to the Property because it belonged to a family. (*See id.* at 115-16). He said he did not know who Kent is, never agreed to sell him the Property and did not receive any money for it. (*See id.* at 115-16, 118). However, on June 8, 2017, the deed transferring title from Blessing Real Estate to Kent in consideration of $10,000.00 was recorded with an illegible signature. (*See* Tolo Exhibit 9).

**5.**

On March 24, 2019, Brown passed away. Donahue testified that he became involved with this matter because Champagne (Tolo) contacted him because he is an estate attorney. (*See* N.T. Trial, at 144). To his knowledge, Brown's mother, Queen Brown, is alive because she was the informant on his death certificate. (*See id.* at 145). She had the opportunity to serve as her son's estate administrator, but she never filled out the letters of administration, and on January 5, 2021, he was appointed as the administrator of the Brown estate. (*See id.* at 148). He said that he could not speak on Brown's behalf because he did not know him. (*See id.* at 146).

**6.**

Kent appeared *pro* se. In his "opening," which the trial court treated as testimony, he stated that Derrick Hart was his wife's uncle and that the Audi vehicle left at the Property was his. (*See id.* at 16). He maintained that Brown and Blessing Real Estate have been working together for years, with

neither entitled to the Property because it should be in his family. He stated that he had a crew that cleaned out the garage and put a new door on it. (**See id.** at 16, 21). His general argument appeared to be that no one was entitled to the Property other than him since he was a family member. He was unaware of any legible copy of the May 30, 2017 deed transferring title of the Property to him from Blessing Real Estate other than the one that had been recorded, which did not contain legible signatures. (**See id.** at 156-57). He had no evidence that he paid the $10,000.00 represented on the deed because he paid for the Property in cash. (**See id.** at 157); (Tolo Exhibit 9).

There was no objection to any of the exhibits entered during the trial.

**B.**

On July 1, 2021, the trial court found that the January 11, 2019 deed between the estates of Catherine Baker and Derrick Hart and Tolo was valid and binding and, therefore, Tolo owned the Property free and clear of any third-party claims. It declared the following deeds void and cancelled: (1) the August 13, 2013 deed purporting to transfer the Property from Brown as sole heir of Catherine Baker to Brown individually; (2) the September 19, 2013 deed purporting to transfer title to of the Property from Brown to Blessing Real Estate; and (3) the May 30, 2017 deed purportedly transferring title of the Property from Blessing Real Estate to Kent. It enjoined Brown, Blessing Real Estate and Kent from asserting any right, title or interest in the Property. (**See** Trial Court Opinion, 2/02/22, at 2-3); (**see also** Order, 7/02/21).

The trial court found that it did not err by overruling the continuous objection to the testimony of Baker Jr., Kent and Champagne because Brown had no actual interest in the immediate result of the lawsuit. It explained that, even if it would have ruled in Blessing Real Estate's favor, the Brown estate would have no interest in the Property because Blessing Real Estate would have held the Property interest. (*See* Trial Ct. Op., at 5-6).

Blessing Real Estate filed post-trial motions (1) seeking to vacate the July 2, 2021 order based on the court's consideration of testimony that should have been excluded pursuant to the Dead Man's Statute; and/or (2) reimbursement of 2017 real estate taxes it paid for the Property. (Blessing Real Estate Post-Trial Motion, 7/12/21, at 1-3). On September 20, 2021, the trial court granted the post-trial motions in part, ordering reimbursement of $1,945.66 to Blessing Real Estate for its payment of the real estate taxes; the court denied the remainder of the post-trial motions. (*See* Order, 9/20/21). Blessing Real Estate timely appealed and filed a statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b).

Blessing Real Estate raises three claims challenging that the trial court erred: (1) in considering testimony that violated the Dead Man's Statute; (2) in finding the August 13, 2013 deed to Brown void; and (3) in finding Blessing

Real Estate has no interest in the Property.[4] (**See** Blessing Real Estate's Brief, at 1-2).

## II.

## A.

Blessing Real Estate contends that Tolo did not sustain its burden of proof concerning the validity of its deed because the trial court erred in failing to exclude the testimony of Alonza Jr., Kent and Champagne pursuant to the Dead Man's Statute. It contends that under the Dead Man's Act, none of the witnesses could present evidence to Brown's contention in the deed that he was the sole heir of Elizabeth Baker. Because Brown had an actual interest in

_____

[4] It is long-settled that "[i]n reviewing an action to quiet title, an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." **Regions Mortgage, Inc. v. Muthler**, 889 A.2d 39, 41 (Pa. 2005) (internal citation and quotation marks omitted).

> It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

**Hollock v. Erie Ins. Exchange**, 842 A.2d 409, 414 (Pa. Super. 2004) (*en banc*), *appeal dismissed as improvidently granted*, 903 A.2d 1185 (Pa. 2006) (internal citations and quotation marks omitted); **see In re Estate of Plance**, 175 A.3d 249, 259-60 (Pa. 2019) ("[A]ll conflicts in testimony must be resolved by the hearing judge, who is the sole arbitrator of credibility.") (citation omitted).

the immediate result of the suit, the interests of Baker and Tolo are adverse to Brown's interests and Brown's rights have passed to a party of record who represents his interests, in both Blessing Real Estate as a successor in title and in Brown's estate that has a direct interest in the validity of title. Tolo maintains that the *devisavit vel non* or real estate of deceased owner exception of the Dead Man's Act applies to this matter.

The Dead Man's Act provides, in pertinent part:

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead … and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased … shall be a competent witness to any matter occurring before the death of said party …. unless the issue or inquiry be *devisavit vel non*, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent.

42 Pa.C.S. § 5930.[5] Specifically, in order for a witness to be disqualified from testifying under this statute:

1. the deceased must have had an actual right or interest in the matter at issue, the interest of the witness must be adverse,

---

[5] "Competency of a witness is the rule and incompetency the exception." ***In re Hendrickson's Estate***, 130 A.3d 143, 146 (Pa. 1957). The party challenging competence bears the burden to establish incompetency. ***See Commonwealth v. Boich***, 982 A.2d 102, 109 (Pa. Super. 2009), *appeal denied*, 3 A.3d 669 (Pa. 2010) (citations omitted).

2. the right of the deceased must have passed to a party of record who represents the deceased's interests, and

3. the interest of the proposed witness be adverse to the interest of the decedent's estate.

***Punxsutawney Municipal Airport Authority v. Lellock***, 745 A.2d 666, 670 (Pa. Super. 2000).

There are exceptions and limitations in the application of the Dead Man's Statute.

- Adverse surviving parties are only disqualified from testifying as to any transaction or event that occurred before decedent's death. ***See Zigmantanis v. Zigmantanis***, 797 A.2d 990, 995 (Pa. Super. 2002).

- "The Dead Man's Act applies only to oral testimony. Written evidence offered by an adverse surviving party is not rendered incompetent by the Dead Man's Act and is admissible." **Larkin v. Metz**, 580 A.2d 1150, 1153 (Pa. Super. 1990) (citation omitted).

- "The *devisavit vel non* exception of the Dead Man's Act provides that witnesses are competent to testify in disputes arising over the passage of property, through will or intestacy, although their testimony might otherwise be rendered incompetent through operation of the general rule." ***In re Est. of Janosky***, 827 A.2d 512, 516 n.3 (Pa. Super. 2003) (citation and internal quotation marks omitted). "This exception applies to disputes involving the transfer of a decedent's estate both by operation of law or by will and renders competent all witnesses claiming decedent's property by reason of her death." ***See In re Est. of Gadiparthi***, 632 A.2d 942, 946 (Pa. Cmwlth. 1993).[6]

---

[6] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." ***Prieto Corp. v. Gambone Const. Co.***, 100 A.3d 602, 607 n.6 (Pa. Super. 2014) (citation omitted).

**B.**

The trial court found that the Dead Man's Statute was not applicable because the testimony of Baker Jr., Kent and Champagne was not adverse since Brown had no actual interest in the immediate result of the lawsuit. It reasoned that the Brown estate had no interest in the Property since Brown had conveyed the Property to Blessing Real Estate. However, we disagree with the trial court because the three-prong test to determine whether the Dead Man's Statute applies has been met.

The first prong was met because the Brown estate could potentially be subject to damages once the deed from Brown to Blessing Real Estate was declared, as it was, void. That would make the Brown estate potentially liable for damages to Blessing Real Estate in the amount paid by Blessing Real Estate for the Property and expenses relating to the Property.

The second prong was met because the interests of Baker Jr., Kent and Champagne (Tolo) are in direct conflict with the Brown estate. Baker Jr., Kent and Champagne maintain that Brown's August 13, 2013 deed was fraudulent and he was not entitled to ownership of the Property after Catherine Baker's passing.

Finally, the third prong is met because Brown's rights in the Property passed to a party of record who represents his interests. Both his estate and his successor-in-interest, Blessing Real Estate, were defendants in the matter and appeared at the trial. *See* 42 Pa.C.S. § 5930. Hence, all three prongs

have been met. Nonetheless, while the testimony of Baker Jr., Kent and Champagne is subject to the application of the Dead Man's Statute, that testimony would be admissible under the *devisavit vel non* exception.

The entire dispute between the parties involved their competing interests in the Property due to Catherine Baker's death and a dispute about who were the surviving heirs. Under this exception, witnesses are competent to testify in disputes arising over the passage of property, through will or intestacy, although their testimony might otherwise be rendered incompetent through operation of the general rule. Although their subject testimony otherwise may be subject to preclusion pursuant to the Dead Man's Statute, application of the *devisavit vel non* exception to the Baker Jr., Kent[7] and Champagne testimony renders it competent. Therefore, the trial court did not err in not excluding it as not competent.[8]

_____

[7] The trial court does not represent that it relied on Kent's testimony.

[8] Moreover, even assuming *arguendo* that the Dead Man's Act should have precluded the testimony, we disagree with Blessing Real Estate's conclusion that if this testimony were precluded, the only evidence that would have remained for the court's consideration was "the Deed of Brown to Blessing upon which Blessing's 50% interest in the Property must be confirmed." (Blessing Real Estate's Brief, at 15). As mentioned, "The Dead Man's Act applies only to **oral testimony**. **Written evidence** offered by an adverse surviving party is **not rendered incompetent** by the Dead Man's Act and is **admissible**." *Larkin v. Metz*, 580 A.2d 1150, 1153 (Pa. Super. 1990) (citation omitted; emphases added). Tolo admitted nine documents into evidence, including the Letter of Administration granted to Baker Jr. and the August 13, 2013 deed in which Brown misrepresented he was the only heir that the court properly considered, even if the Dead Man's Act applied to
*(Footnote Continued Next Page)*

**III.**

Blessing Real Estate next claims that the trial court erred in finding that the August 13, 2013 deed between Brown as sole heir of Catherine Baker's estate and Brown individually was void. (*See* Blessing Real Estate's Brief, at 15-20). It maintains the deed was presumptively valid and that Tolo failed to establish its invalidity by clear and convincing evidence.[9]

As observed by Blessing Real Estate, it is well-settled that "[t]he burden of overcoming the presumption of delivery of a deed resulting from its recording is upon the person attacking its validity and requires clear, positive proof that no delivery was intended and that the recording was unauthorized." *Claar v. Burket*, 136 A.2d 111, 113 (Pa. 1957) (citation omitted). If "a deed [is] absolute and complete in itself, attacked as being in fact otherwise intended … , there is a [] presumption that the title is in conformity with the deed, and it should not be dislodged except by clear, precise, convincing, and satisfactory evidence to the contrary." *Id.*

---

preclude the testimony. Baker Jr.'s birth certificate was also introduced into evidence.

[9] Blessing Real Estate below and in its brief contended that it was entitled to all of the Property. Nowhere did it explain how that it was so when it was established that the August 13, 2013 deed was recorded transferring title of the Property from Brown as "sole heir" of Catherine Baker to himself individually, and Catherine Baker only owned one-half of the Property. At oral argument, counsel for Blessing Real Estate conceded that it is only entitled to one-half of the Property.

However, also well-settled and not addressed by Blessing Real Estate, is that an estate administrator "is under a duty to take custody of the estate and administer it in such a way as to preserve and protect the property for distribution to the proper persons within a reasonable time*." **In re Kurkowski's Estate**, 409 A.2d 357, 360-61 (Pa. 1979) (citations omitted). Hence, an individual, even assuming he may be entitled to subsequent share in the distribution of an estate, may not "retain possession of an asset of an estate when the personal representative is charged with the responsibility of possessing and administering such asset[.]" **In re Brose's Estate**, 223 A.32d 661, 663 (Pa. 1966).

Here, the trial court found:

> As fact-finder, [the trial court] was well within [its] discretion in finding [the August 13, 2013 and September 19, 2013] deeds to be void based off the admissible evidence presented which included, but was not limited to, Alonza Baker and David Champagne's testimony that they did not know Defendant Brown, Alonza Baker testifying that [he] was the Administrator of Catherine Baker's estate, more shown by the Letter of Administration. The trial court found this evidence sufficient to consider the deed of August 13, 2013 granting title to Decedent Brown fraudulent and voided the deed per the court's order.
>
> Any further transfer of the property from the voided deed would therefore be void as the court found that Decedent Brown did not have interest in the property. …

- 15 -

(Trial Ct. Op., at 6-7). [10]

In addition to the foregoing, we agree with Tolo that the evidence established that Brown's allegation on the August 13, 2013 deed that he was the **sole** heir of Catherine Baker was a fraudulent misrepresentation. (**See** Tolo's Brief, at 10). It is undisputed that Baker Jr. was Catherine's son which was supported by his birth certificate. Additionally, Baker Jr. testified to having four siblings and this testimony was also undisputed. (**See** N.T. Trial, at 30); (Tolo Exhibit 5).

It was for the trial court to consider the weight of this competing evidence. The testimony and evidence provided *prima facie* proof that the August 2013 deed purporting to transfer the Property from Brown as Catherine Baker's heir to Brown individually was invalid. **See In re Kurkowski's Estate**, **supra** at 360-61; **In re Brose's Estate**, **supra** at 663. Accordingly, the competent evidence of record supports the court's finding that the August

_____

[10] When this October 28, 2013 deed was filed from Brown to Blessing Real Estate, we noted that the estate had been raised on January 30, 2013, when Baker Jr. was granted letters of administration for his mother's estate. We note that 20 Pa.C.S. § 3535 provides, in relevant part, that "[u]pon application of any party in interest and after such notice as the court shall direct, the court may order the personal representative to deliver to any distributee possession of any real estate to which he is entitled, provided that claimants and other distributees are not prejudiced thereby."

13, 2013 deed was invalid, and no legal error or abuse of discretion was committed . **See Regions Mortg., Inc.**, **supra** at 41.[11]

**IV.**

Finally, Blessing Real Estate argues that the trial court erred in finding that it had no interest in the Property because it contends the Catherine Baker and Derrick Hart estates are estopped from challenging Blessing Real Estate's interest status as a *bona fide* purchaser for value in 2013 because, in reliance on Baker Jr.'s failure to address the Brown deeds, he paid the taxes to prevent the Property from being sold at a tax sale in 2017. (**See** Blessing Real Estate's Brief, at 20-23). In other words, although it realized the Property was titled to someone else, Blessing Real Estate maintains it was Baker Jr.'s responsibility to notify it of this fact, and his failure to do so rendered Blessing Real Estate a *bona fide* purchaser and justified its actions.

Pursuant to the Recording Statute,

> All deeds … wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands,

---

[11] We note that Blessing Real Estate states that the challenge to the 2013 deed implicates the doctrine of laches because no action was taken on the deed until 2018 when Baker Jr. filed the action to quiet title. (**See id.** at 19). However, Blessing Real Estate fails to provide any argument or discussion regarding this claim, thus waiving it. The trial court found that laches did not apply because Brown had unclean hands himself due to his recording of the fraudulent August 13, 2013 deed, rendering any deeds following to be void. (**See** Trial Ct. Op., at 7). The trial court did not find, as Blessing Real Estate represents, that Blessing Real Estate had unclean hands, only that its deed was void because of the fraudulent Brown deed. We discern no abuse of discretion or error of law in this finding.

… shall be recorded in the office for the recording of deeds …. Every such deed … which shall not be … recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser … duly entered in the prothonotary's office of the county in which the lands … are situate[.]

21 P.S. § 351. "A *bona fide* purchaser is one who buys real or personal property without notice of claim of others' outstanding rights in the property." **Lesnick v. Chartiers Natural Gas Co.**, 889 A.2d 1282, 1285 (Pa. Super. 2005). Hence, the grantee of an unrecorded deed cannot claim protection from a bona fide purchaser who had no notice of the existence of the deed.

Here, the chain of title demonstrates that on May 19, 1980, the Property was deeded to Catherine Baker, Baker Sr. and Derrick Hart, and the deed was recorded. (**See** Tolo Exhibits 1, 11). Baker Jr. and Cheree Clark were appointed to administer the Catherine Baker and Derrick Hart estates upon the passing of the individuals. (**See** Tolo Exhibits 4, 6). At no time was the Property deeded to Brown prior to him fraudulently deeding it to himself in 2013. (**See** Tolo Exhibit 11). Therefore, where there were no unrecorded undiscoverable deeds that failed to give Blessing Real Estate notice of the estates' rights to the Property, Blessing Real Estate was not a *bona fide* purchaser subject to the protections afforded by the Recording Statute.

Nor are we persuaded by its reliance on **Lund v. Heinrich**, 189 A.2d 581 (Pa. 1963), and **Roberts v. Estate of Purely**, 718 A.2d 837 (Pa. 1998).

**Lund** held that "[i]f … the cotenants sit idly by for over twenty-five years, and elect to make no claim of ownership in the property **until after**

- 18 -

**the interests of a bona fide purchaser has intervened**, that amounts to ratification and estops them from subsequently questioning the title of the innocent purchaser." **Lund**, **supra** at 584 (citations and emphases omitted; emphases added). "An **innocent** purchaser for value, **having neither actual nor constructive knowledge of claims of a third party**, holds the title acquired free of any such secret equities. Where one of two innocent persons must suffer, he whose neglect makes the injury possible must bear the responsibility." **Id.** (citations omitted; emphases added). Relying on **Lund**, the **Roberts** Court observed that, "[t]he recording statute was intended to protect bona fide purchasers who give value for land. In order to qualify as a bona fide purchaser, the subsequent purchaser must be without notice of a prior equitable interest." **Roberts**, **supra** at 841.

Here, as stated previously, Blessing Real Estate is not an innocent *bona fide* purchaser. The ownership interest of the estates was not hidden, but instead was recorded and apparent from the chain of title. Because of its neglect in failing to protect its interest despite this knowledge, Blessing Real Estate must bear responsibility for its decision to purchase the Property.

For all of these reasons, Blessing Real Estate's issues are without merit where the competent evidence of record supports the court's findings, and no

legal error or abuse of discretion was committed.[12] **See Regions Mortg., Inc.**, **supra** at 41.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2022

---

[12] To the extent that any of our reasoning differs from that of the trial court, we note that "we may affirm the decision of the trial court on any valid basis appearing of record." **Louis Dreyfus Commodities Suisse SA v. Fin. Software Sys., Inc.**, 99 A.3d 79, 82 (Pa. Super. 2014) (citation omitted).